UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **OLLIE COLEMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-0425** |
| **MARCUS MYERS** | **SECTION: "I"(1)** |

## REPORT AND RECOMMENDATION

Petitioner, Ollie Coleman, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

Pursuant to a plea agreement, petitioner entered an Alford plea,[1] pleading guilty to a charge of third degree rape, and he was sentenced to a term of fifteen years imprisonment without benefit of parole, probation, or suspension of sentence.[2] He later sought post-conviction relief,[3] which was denied by the state district court,[4] the Louisiana Fifth Circuit Court of Appeal,[5] and the Louisiana Supreme Court.[6]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.[7] The state opposes the application.[8]

---

[1] See North Carolina v. Alford, 400 U.S. 25 (1970). In Alford, the Supreme Court held: "[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence **even if he is unwilling or unable to admit his participation in the acts constituting the crime**." Id. at 37 (emphasis added). Therefore, "[a]n Alford plea is one in which the defendant maintains his innocence but agrees to plead guilty." United States v. Montiel-Cortes, 849 F.3d 221, 223 n.1 (5th Cir. 2017).

[2] State Rec., Vol. 1 of 2, minute entries dated August 12, 2019, and December 9, 2019; State Rec., Vol. 2 of 2, Reasons for Sentence dated December 9, 2019.

[3] State Rec., Vol. 2 of 2, Application for Post-Conviction Relief.

[4] State Rec., Vol. 2 of 2, Judgment dated February 10, 2021.

[5] State v. Coleman, No. 21-KH-244 (La. App. 5th Cir. June 21, 2021); State Rec., Vol. 2 of 2.

[6] State v. Coleman, 332 So. 3d 77 (La. 2022); State Rec., Vol. 2 of 2.

[7] Rec. Doc. 3.

[8] Rec. Doc. 9. The state was directed to address the timeliness of petitioner's federal application in its answer, see Rec. Doc. 4, p. 1, but the state failed to comply with that order. Although it appears that the application may in fact

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court).  The applicable standards of review are now as follows.

As to pure questions of fact, factual findings are presumed to be correct and a federal court must give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

---

be untimely, this Court is not required to raise that defense *sua sponte* and declines to do so.  See Day v. McDonough, 547 U.S. 198, 209-10 (2006) ("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition. ...  If, as this Court has held, district judges have no obligation to act as counsel or paralegal to *pro se* litigants, then, by the same token, they surely have no obligation to assist attorneys representing the State." (citation, footnote, quotation marks, and brackets omitted)).  Therefore, the undersigned, like the state, will address petitioner's claims on the merits.

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." Id. at 170.

Further, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted).

In summary, "AEDPA prevents defendants – **and federal courts** – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added). The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. Woodall, 572 U.S. at 417.

## II. Petitioner's Claims

### A. Excessive Bond

As his first claim, petitioner states: "Petitioner Was Subjected, During Pre-Trial Proceedings, to an Unconstitutionally Excessive Bond in Violation of the Eighth and Fourteenth Amendments of the United States Constitution."[9] However, such a claim asserted by a convicted

---

[9] Rec. Doc. 3-1, p. 10.

4

prisoner simply is not cognizable under 28 U.S.C. § 2254.  See, e.g., Ether v. Dixon, Case No. 20-60241, 2022 WL 1908918, at *13 (S.D. Fla. June 3, 2022) ("[F]ederal habeas petitioners cannot challenge, under the auspices of § 2254, the terms and conditions of their pre-trial detention."); Ray v. Oklahoma Department of Corrections, Case No. CIV-21-694, 2021 WL 6504241, at *7 n.4 (W.D. Okla. Dec. 17, 2021) ("A challenge to excessive pretrial bail is not cognizable in a Section 2254 habeas action."), adopted, 2022 WL 163632 (W.D. Okla. Jan. 18, 2022); Mills v. Smith, Civ. Action No. 18-136E, 2021 WL 2191044, at *6 (W.D. Pa. Apr. 26, 2021) ("[T]o the extent Petitioner is challenging his pre-trial bail as excessive in violation of the Eighth Amendment, this claim is moot because Petitioner has already been convicted."), adopted, 2021 WL 2190819 (W.D. Pa. May 31, 2021); Dowey v. Maine, Docket No. 2:15-cv-138, 2015 WL 6123530, at *5 (D. Maine Oct. 16, 2015) ("Claims regarding pre-conviction bail are not cognizable under section 2254, which applies only to persons 'in custody pursuant to the judgment of a State court.' 28 U.S.C. § 2254(a).  Petitioner is not in custody due to a pre-conviction bail bond; rather, she is in custody because she is serving a sentence following her conviction.  Because Petitioner's current restraint is not related to the pre-conviction bail bond, she has no habeas claim regarding her pre-conviction bail." (footnotes omitted)).  Therefore, this claim should be denied.

## B.  Judicial Bias

As his second claim, petitioner states:  "Petitioner was subjected to a Biased and Corrupt Venue in Violation of the Fifth and Fourteenth Amendments of the United States Constitution."[10] When he first asserted this claim in the state post-conviction proceedings, the state district court denied relief, finding that the "[a]pplication fails to state a valid ground for relief" pursuant to

---

[10] Id. at p. 13.

Article 930.3 of the Louisiana Code of Criminal Procedure.[11] The Louisiana Fifth Circuit Court of Appeal then likewise rejected the claim, holding:

> Relator … argues that his guilty plea proceedings were unconstitutional because the trial judge who accepted his guilty plea was "exposed nationally for her long-time hidden but now exposed and 'admitted' racism." Relator argues that such conduct requires a "per se" finding that every case over which the trial judge presided is "infected." However, in his APCR and his application to this Court, relator fails to point to any specific circumstances surrounding his guilty plea or proceedings to show actual bias or to demonstrate how the allegations against the trial judge affected the voluntariness of his guilty plea. Therefore, we find that the trial court did not err in determining that relator's conclusory allegations fail to meet his burden of proof under La. C.Cr.P. art. 930.2.[12]

The Louisiana Supreme Court thereafter denied his related writ application without expressly discussing the claim.[13]

As an initial matter, it must be noted that it is undisputed that the state district judge who presided over petitioner's case did in fact subsequently resign from office when her admitted use of racial slurs in other contexts came to light. While such racist behavior and attitudes are appalling

---

[11] State Rec., Vol. 2 of 2, Judgment dated February 10, 2021. Article 930.3 provides:

> If the petitioner is in custody after sentence for conviction for an offense, relief shall be granted only on the following grounds:
>
> (1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana.
> (2) The court exceeded its jurisdiction.
> (3) The conviction or sentence subjected him to double jeopardy.
> (4) The limitations on the institution of prosecution had expired.
> (5) The statute creating the offense for which he was convicted and sentenced is unconstitutional.
> (6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.
> (7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.
> (8) The petitioner is determined by clear and convincing evidence to be factually innocent under Article 926.2.

La. Code Crim P. art. 930.3.
[12] State v. Coleman, No. 21-KH-244, at pp. 1-2 (La. App. 5th Cir. June 21, 2021); State Rec., Vol. 2 of 2.
[13] State v. Coleman, 332 So. 3d 77 (La. 2022); State Rec., Vol. 2 of 2.

and unbefitting of a judge, there is simply no indication that racial animus played any role in the instant case. It is not alleged that the judge directed any such slurs toward petitioner. Moreover, as noted, he voluntarily pleaded guilty and was sentenced pursuant to a negotiated plea agreement, and he has not alleged, much less shown, that his decision to enter the beneficial Alford plea was in any way affected by the judge's behavior or attitudes.

In light of those circumstances, petitioner's claim was denied in state court. For him to now obtain relief on the claim in federal court, he must establish that the state court decision rejecting the claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). He has not made that showing. On the contrary, he has not identified, and this Court has not found, a United States Supreme Court decision holding that a criminal defendant's conviction in circumstances such as this is constitutionally infirm. That is fatal, because where the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). Therefore, this claim should be denied.

### C.  Ineffective Assistance of Counsel

As his third claim, petitioner states: "Petitioner was subjected to Ineffective Assistance of Counsel in Violation of the Sixth and Fourteenth Amendments of the United States Constitution."[14] The clearly established federal law governing such ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984).

In Strickland, the United States Supreme Court held:

---

[14] Rec. Doc. 3-1, p. 15.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction … has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction … resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 697.

When assessing whether counsel's performance was deficient, a court must always be mindful that "Strickland does not guarantee perfect representation, only a reasonably competent attorney." Harrington v. Richter, 562 U.S. 86, 110 (2011). Therefore, "[t]o establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." Id. at 104 (quotation marks omitted). Moreover, the Supreme Court has cautioned:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland, 466 U.S. at 689 (citations and quotation marks omitted).

Strickland's prejudice component is no less exacting. The Supreme Court has explained:

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently.  Instead, Strickland asks whether it is reasonably likely the result would have been different.  This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case.  The likelihood of a different result must be substantial, not just conceivable.

Richter, 562 U.S. at 111-12 (citations and quotation marks omitted).  Moreover, where, as here, a petitioner pleaded guilty, the prejudice prong of an ineffective assistance of counsel claim is met only if he shows "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); accord James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

In the instant case, petitioner asserted his ineffective assistance of counsel claim to the state courts in his state post-conviction application.  The state district court denied the claim, finding that the "[a]pplication fails to state a valid ground for relief" pursuant to Article 930.3 of the Louisiana Code of Criminal Procedure.[15]  Citing Strickland, the Louisiana Fifth Circuit Court of Appeal then likewise denied relief, holding:

> [R]elator claims ineffective assistance of counsel, asserting that counsel rendered ineffective assistance by failing:  (1) to investigate his case or obtain an expert to challenge the DNA evidence in his case; (2) to object to the amended bill of information; and (3) to present mitigating evidence at sentencing.
> 	A criminal defendant is entitled to ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution.  State v. Johnson, 08-1156 (La. App. 5 Cir. 4/28/09), 9 So.3d 1084, 1092, writ denied, 09-1394 (La. 2/26/10), 28 So.3d 268.  To prove ineffective assistance of counsel, a defendant must prove both that his attorney's performance was deficient and that he was prejudiced by the deficiency.  Id., 9 So.3d at 1092-93 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).  In order to show prejudice, a defendant must demonstrate that but for counsel's deficient performance, the outcome of the proceedings would have been different.  Id.

---

[15] State Rec., Vol. 2 of 2, Judgment dated February 10, 2021.

Moreover, the Sixth Amendment does not guarantee a defendant errorless counsel or counsel judged ineffective in hindsight. State v. Cambre, 05-888 (La. App. 5 Cir. 7/25/06), 939 So.2d 446, 460, writ denied, 06-2121 (La. 4/20/07), 954 So.2d 158, citing State v. LaCaze, 99-584 (La. 1/25/02), 824 So.2d 1063, 1078, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). There is a strong presumption that counsel's conduct will fall within the wide range of professional assistance. State v. Gorman, 11-491 (La. App. 5 Cir. 2/14/12), 88 So.3d 590, 600.

The Louisiana Supreme Court has held that, "[t]he two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to challenges to guilty pleas based on claims of ineffective assistance of counsel." State v. West, 2009-2810 (La. 12/10/10), 50 So.3d 148, 149, citing Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); State v. Washington, 491 So.2d 1337, 1339 (La. 1986).

As to relator's claims surrounding the DNA evidence, relator concedes that the DNA evidence obtained in connection with this case was a positive match for his DNA, but argues that an expert determined the sample to be "weak." Relator asserts that, had counsel investigated the DNA sample, which he suggests matches more than one individual, counsel would have been able to obtain an expert to challenge the quality of the DNA evidence at trial. Upon review of the writ application and attachments thereto, we find that relator provides only general conclusory statements as to why he believed that he was not the only match on the DNA test results and fails to prove that further investigation of the DNA sample would have affected his decision to plead guilty or that the results of the proceedings would have been any different.

Relator also claims that his counsel was ineffective for failing to file a motion to quash the bill of information. First, relator fails to set forth any basis upon which his counsel should have objected to the bill of information. Further, in any event, "[t]he time and manner of making objections is part of the trial strategy decision-making of the trial attorney." State v. Moore, 16-644 (La. App. 5 Cir. 3/15/17), 215 So.3d 951, 968. Therefore, we find relator has failed to meet his burden to prove ineffective assistance on this claim.

Finally, relator complains that counsel was ineffective for failing to object to an excessive sentence and for failing to present mitigating evidence at his sentencing hearing. First, relator failed to attach his sentencing transcript or documentation to prove what the trial judge considered at sentencing. Second, the official record reflects that the trial judge did consider mitigating evidence, such as correspondence from relator's friends and family, in connection with his sentencing. Lastly, relator's sentence was imposed in conformity with a negotiated plea with a 15-year sentencing cap. La. C.Cr.P. art. 881.2(A)(2) provides that a "defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." This prohibition encompasses sentences imposed pursuant to plea agreements setting forth specific sentences, as well as plea agreements with sentencing caps. See State v. Bolton, 02-1034 (La. App. 5 Cir. 3/11/03), 844 So.2d 135, 142, writ denied, 03-

> 1159 (La. 11/14/03), 858 So.2d 417.  Therefore, we find relator has failed to meet his burden to prove ineffective assistance of counsel as to this claim.[16]

The Louisiana Supreme Court thereafter denied his related writ application, succinctly stating: "Denied.  Applicant fails to show that he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[17]

Where, as here, a habeas petitioner's ineffective assistance of counsel claim was denied on the merits in the state courts, he faces even greater obstacles to obtaining relief on the claim in federal court.  Because such a claim presents a mixed question of law and fact, the petitioner is entitled to federal habeas relief only if he shows that the state court decision denying the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).

Under that deferential standard of review, the determinative factor is not simply whether counsel was ineffective in the independent view of the federal court; rather, it is "whether the state court's **application of the Strickland standard** was unreasonable."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (emphasis added).  Therefore, "[w]hen § 2254(d) applies, the question is **not** whether counsel's actions were reasonable.  **The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard**."  Id. at 105 (emphasis added).  That makes a petitioner's already difficult task even more so, because it requires the federal court to accord the state court decision "a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."  Id. at 101; see also id. at 105 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two

---

[16] State v. Coleman, No. 21-KH-244, at pp. 2-3 (La. App. 5th Cir. June 21, 2021); State Rec., Vol. 2 of 2.
[17] State v. Coleman, 332 So. 3d 77 (La. 2022); State Rec., Vol. 2 of 2.

apply in tandem, review is doubly so."). As a result, in effect, the federal court must "afford **both** the state court **and** the defense attorney the benefit of the doubt." Woods v. Etherton, 578 U.S. 113, 117 (2016) (emphasis added; quotation marks omitted).

For the following reasons, the Court finds that, under that doubly deferential standard, it cannot be said that relief is warranted with respect to any aspect of petitioner's ineffective assistance of counsel claim.

Petitioner first alleges that his counsel did not adequately investigate the case.[18] Moreover, he alleges that a better investigation would have resulted in an ability to discredit the state's "weak" DNA evidence and would have revealed the existence of other evidence which could have been used to cast doubt on the veracity of the victim's allegations. The flaw with these contentions is that a petitioner must do more than merely allege that counsel's investigation was inadequate; rather, he must prove it by showing that a more thorough investigation would in fact have revealed additional evidence beneficial to the defense. See, e.g., Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) ("A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate and present mitigating evidence without adducing what the investigation would have shown."); Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998) (faulting petitioner for not "point[ing] to any evidence" supporting his allegation of inadequate investigation); Shelton v. Kent, Civ. Action No. 1:20-CV-01025, 2021 WL 6285930, at *4 (W.D. La. Nov. 15, 2021) ("Speculation about what the investigation would have yielded is insufficient to show prejudice under Strickland."), adopted, 2022 WL 59099 (W.D. La. Jan. 5, 2022); United States v. Christie, Crim. No. 04-50140, 2011 WL 1376279, at *7 (W.D. La. Apr. 11, 2011) ("Absent some evidence in the record – beyond the mere conclusory allegations in his *pro se* brief – Christie's barefaced

---

[18] See Rec. Doc. 3-1, pp. 17-18 and 19-20.

12

accusations regarding his attorney's alleged inadequate investigation must be disregarded by the Court."). Where, as here, a petitioner fails to prove that beneficial evidence was in fact available and discoverable through a more thorough investigation, his contentions are wholly speculative and therefore insufficient to meet his burden of proof. See, e.g., Eaglin v. Louisiana, Civ. Action No. 19-9659, 2020 WL 475770, at *25 (E.D. La. Jan. 7, 2020), adopted, 2020 WL 474923 (E.D. La. Jan. 29, 2020).

Petitioner next alleges that his counsel was ineffective for failing to move to quash or otherwise challenge the bill of information.[19] In March of 2018, petitioner filed a *pro se* motion to quash;[20] however, he withdrew that motion at a hearing on May 14, 2018.[21] The record reflects that the bill of information was later amended to a lesser offense, factual errors in the bill of information were corrected, and petitioner entered the Alford plea to the amended, factually corrected charge. He appears to be contending that if the errors had been discovered and corrected earlier, he might have been able to secure a more favorable plea bargain. For the following reasons, his contention is unpersuasive.

As an initial matter, it must be noted that even when a motion to quash a bill of information is filed and granted, the prosecutor was not without recourse. Except in limited circumstances not applicable herein, the prosecutor may simply file a new charging document correcting any errors in the original. See La. Code Crim. P. art. 538; State v. Sliger, 261 La. 1011, 261 So. 2d 648 (1972); State v. Welkner, 259 La. 815, 829-30, 253 So. 2d 192, 197 (1971); State v. Thomas, 111 So. 3d 386, 391 (La. App. 1st Cir. 2012). And so, generally, there is no reason to believe that the quashing of a problematic bill of information would have any effect rather than merely delaying

---

[19] See Rec. Doc. 3-1, pp. 19 and 23-24.
[20] State Rec., Vol. 1 of 2.
[21] State Rec., Vol. 1 of 2, minute entry dated May 14, 2018.

the proceedings. See, e.g., Pickney v. Cain, 337 F.3d 542, 545-46 (5th Cir. 2003); Lapell v. Cain, Civ. Action No. 04-742, 2005 WL 3541069, at *13 (E.D. La. Nov. 4, 2005) ("Assuming that the motion was filed and the bill of information had been quashed, the state could simply have issued a new or amended bill of information. In light of that fact, a successful outcome on the motion would have served no purpose other than to delay the criminal proceedings.").

Second, in any event, petitioner's suggestion that he might have received a more beneficial plea agreement had the errors in the bill of information been discovered earlier is wholly speculative. He received the plea bargain the prosecutor deemed acceptable to the state given the facts of this crime. There is simply nothing in the record to suggest that the prosecutor's views on that matter would have been affected in any way by the timing of the errors' discovery.

For these reasons, petitioner has not established that he was prejudiced by counsel's failure to adopt the pro se motion to quash or to file one of his own. And, absent prejudice, petitioner cannot show that counsel was ineffective in this respect.

Lastly, petitioner alleges his counsel provided ineffective assistance with respect to sentencing.[22] At sentencing, in conformity with the plea bargain, the state district court imposed a fifteen-year sentence and explained:

> This is the case of a forty (40) year old male who is officially classified as a third felony offender. On August 12, 2019, the defendant entered a "best interest" plea pursuant to North Carolina v. Alford to a charge of Third Degree Rape of D.M., date of birth January 19, 2001. Sentencing was deferred, and a Presentence Investigation Report was ordered. Subsequently, it was discovered that both the Bill of Information and the Boykin form contained an error in the date of birth of the victim. Out of an abundance of caution, the Bill of Information was amended, and the defendant entered a "best interest" plea to the amended Bill. The Presentence Investigation Report has been reviewed by the Court, has been made available to the Defendant and his counsel, and is filed herein and made a part hereof by reference, and is ordered sealed. The Defendant was ordered to produce any mitigating evidence. The Court received letters from friends and family of the defendant, as well as from the defendant himself. The Court also received

---

[22] See Rec. Doc. 3-1, pp. 20-23.

numerous letters from friends and family of the victim in this matter. All letters were considered by the Court in arriving at this sentence and are being filed under seal with the Presentence Investigation Report.

The offense of Third Degree Rape provides for a sentence of imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, for not more than twenty-five years. At the time of the defendant's plea, it was agreed upon by the district attorney and defense counsel that the maximum sentence the Court would impose in this case is fifteen years at hard labor without benefit of parole, probation, or suspension of sentence.

After taking into consideration the report to the Court, the Court believes that there is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime, the defendant is in need of correctional treatment or a custodial environment that be provided most effectively by his commitment to an institution, and a lesser sentence will deprecate the seriousness of the defendant's crime.

In arriving at a sentence this court has considered all factors mentioned in Code of Criminal Procedure Article 894.1. In addition to the positive findings under A(1), (2) and (3), particular mention should be made of the following under Subsection B:

> (1)  The offender's conduct during the commission of the offense manifested deliberate cruelty to the victim.
> (2)  The offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health.
> (4)  The offender used his or her position or status to facilitate the commission of the offense.
> (9)  The offense resulted in a significant permanent injury or significant economic loss to the victim or his family.

The Court noted the defendant's prior offenses and extensive criminal record as contained in the pre-sentence report.

**FOR ALL OF THE ABOVE REASONS, IT IS THE SENTENCE OF THIS COURT THAT** the defendant be committed to the Department of Corrections for a period of FIFTEEN (15) YEARS at hard labor, without benefit of parole, probation, or suspension of sentence, with credit for time served since the date of his arrest on June 22, 2015. …[23]

Petitioner now contends that his counsel was ineffective for failing to present additional

mitigating evidence, "to correct any inaccurate assumptions concerning the law and the court's

---

[23] State Rec., Vol. 2 of 2, Reasons for Sentence dated December 9, 2019.

capacity to deviate downward if warranted,"[24] and to object to the sentence imposed or move for reconsideration. Again, his contentions are unpersuasive.

As to the suggestion that counsel should have presented additional mitigating evidence, petitioner has not established that any such evidence existed.

As to his suggestion that the district court judge was under an incorrect assumption that she was unable to impose a lesser sentence, that is obviously belied by the foregoing detailed reasons she gave at sentencing. She was aware that she could impose a lesser sentence, she simply – and expressly – found that a lesser sentence was unwarranted here.

As to the suggestion that counsel should have objected to or moved for reconsideration of the sentence, such actions would have been futile. As part of the plea bargain, petitioner expressly agreed to a sentencing cap of fifteen years and the sentence imposed did not exceed that cap. Given that fact, neither he nor his counsel had grounds for complaint; moreover, in light of the judge's considered and detailed reasons for the sentence imposed, there is simply no reason to believe that she would have been disposed to alter that sentence. And petitioner is simply wrong in contending that he was unable to appeal his sentence **because of** counsel's failure to file a motion for reconsideration. That bar resulted from the fact that the sentence was imposed in conformity to the terms of a voluntary plea agreement – not from the absence of any such motion by counsel. See La. Code Crim. P. art. 881.2(A)(2) ("The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea."); State v. Johnson, 768 So. 2d 234, 236-37 (La. App. 1st Cir. 2000) ("Louisiana Code of Criminal Procedure article 881.1 D provides that the failure to file or make a motion to reconsider sentence precludes the defendant from raising an excessive sentence argument on appeal. Herein,

---

[24] Rec. Doc. 3-1, p. 20.

however, defendant was barred from seeking review of his sentence because it was imposed as part of a plea agreement, not from counsel's failure to make a motion to reconsider sentence. Thus, there was no deficient performance by defense counsel."); see also State v. Doming, 197 So. 3d 812, 817 (La. App. 5th Cir. 2016) ("A defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement that was set forth in the record at the time of the plea. La.C.Cr.P. art. 881.2 A(2). Therefore, trial counsel's failure to move for reconsideration of the sentence does not constitute deficient performance.")

Lastly, in addition to the foregoing defects with respect to petitioner's ineffective assistance of counsel claim, there is another: as noted, because he pleaded guilty, he can prevail on his ineffective assistance of counsel claim only by showing "that there is a reasonable probability that, but for counsel's errors, **he would not have pleaded guilty and would have insisted on going to trial**." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (emphasis added); accord James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995). Here, petitioner does not even allege that he would not have pleaded guilty but for the alleged foregoing defects in his counsel's performance. Nonetheless, even if he had, the Court would not be required to accept such self-serving statements as true. See Lee v. United States, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); Schillereff v. Davis, 766 F. App'x 146, 154 (5th Cir. 2019). And here such an allegation would not be credible, given the reality that the plea agreement benefited petitioner greatly. As noted, if he had gone to trial, he potentially faced a **much** longer sentence: twenty-five years for his underlying crime, **plus** an additional enhancement as a habitual

offender. The Court finds that there is no reasonable probability he would have declined the generous plea bargain and insisted on going to trial in this case.

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He has not made that showing in the instant case. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## RECOMMENDATION

It is therefore **RECOMMENDED** the federal application for habeas corpus relief filed by Ollie Coleman be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 15th day of August, 2022.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**